**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

———————————————————————

THOMAS U. KENNEY, on Behalf of Himself and
A Class of Persons Similarly Situated

Plaintiff,

v.

STATE STREET CORPORATION, et al.

Defendants.

———————————————————————

Civil Action No. 09-10750-DJC

———————————————————————

CASEY J. RICHARD, on Behalf of Himself and
A Class of Persons Similarly Situated

Plaintiff,

v.

STATE STREET CORPORATION, et al.

Defendants.

———————————————————————

Civil Action No. 10-10184-GAO

**CLASS ACTION SETTLEMENT AGREEMENT**

   This CLASS ACTION SETTLEMENT AGREEMENT ("*Settlement Agreement*") is entered into by and among (i) *Plaintiffs* individually and on behalf of the *Settlement Class* and the *Plan*, and (ii) *Defendants* in the above-captioned actions.[1]

***RECITALS***

   WHEREAS, *Kenney v. State Street Corp. et al.*, No. 09-10750-DJC (D. Mass.), and *Richard v. State Street Corp. et al.*, No. 10-10184-GAO (D. Mass.), were commenced and consolidated for pretrial purposes, both cases asserting various claims for relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, against *Defendants*, all of which claims are disputed by *Defendants*; and

---

[1] *Italicized* words are defined herein.

WHEREAS, the *Parties* reached an agreement in principle for a settlement in these *Actions*; and

WHEREAS, the *Parties* desire to promptly to fully resolve, settle and dismiss with prejudice the *Actions* without further litigation;

NOW, THEREFORE, the *Parties*, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

1.      DEFINITIONS

As used in this *Settlement Agreement*, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1.      "*Actions*" shall mean *Kenney v. State Street Corp. et al.*, No. 09-10750-DJC (D. Mass.) and *Richard v. State Street Corp. et al.*, No. 10-10184-GAO (D. Mass.).

1.2.      "*Affiliate*" shall mean any entity that owns or controls, is owned or controlled by, or is under common ownership or control with, a *Person*.

1.3.      "*Agreed Expenses*" shall have the meaning set forth in Section 9.2.3 hereof.

1.4.      "*Agreement Execution Date*" shall have the meaning set forth in Section 11.13 hereof.

1.5.      "*Case Contribution Award*" shall have the meaning set forth in paragraph 10.1 hereof.

1.6      "*Class Counsel*" shall mean Shapiro Haber & Urmy LLP and Stull, Stull & Brody.

1.7.      "*Class Exemption*" means the Prohibited Transaction Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended.

1.8.      "*Class Notice*" shall mean the following forms of notice appended to the form of *Preliminary Approval Order* attached hereto as Exhibit 1.

1.8.1.   "*Long-Form Notice*" shall mean the notice which is to be posted on the *Settlement Website* substantially in the form of Exhibit A to the form of Preliminary Approval Order attached hereto as Exhibit 1.

1.8.2.   "*Publication Notice*" shall mean the form of notice appended as Exhibit B to the form of *Preliminary Approval Order* attached hereto as Exhibit 1.

1.9.    "*Class Period*" shall mean the period from August 27, 2007 to October 21, 2009.

1.10.    "*Class Settlement Amount*" shall mean the aggregate sum of ten million dollars in United States currency ($10,000,000.00).

1.11.    "*Company*" shall mean State Street Corporation.

1.12.    "*Company Stock*" shall mean shares of common stock of the *Company*.

1.13.    "*Complaints*" shall mean each complaint and amended complaint filed in the *Actions*.

1.14.    "*Court*" shall mean the United States District Court for the District of Massachusetts.

1.15.    "*Defendants*" shall mean, collectively, the *Company*, State Street Bank and Trust Company, the *Plan Committees*, and the *Individual Defendants*.

1.16.    "*Effective Date*" shall mean the date on which the *Final Order* becomes *Final* or, in the event that the *Court* enters an order and final judgment in a form materially different from *Exhibit 2* ("*Alternative Judgment*") and none of the *Parties* elect to terminate this *Settlement* within ten business days thereof,  the date that such *Alternative Judgment* becomes *Final*.

1.17.    "*ERISA*" shall mean the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated and case law thereunder.

1.18.    "*Escrow Agent*" shall mean the *Person* selected by *Class Counsel* and agreed upon by the *Parties* to control an account established at a financial institution for the deposit(s) and withdrawal(s) of any amounts relating to the *Settlement*, which deposit(s) and withdrawal(s) may be made only as is consistent with the terms of this *Settlement Agreement* and as authorized by *WilmerHale* and *Class Counsel*.

1.19.    "*ESOP*" shall mean the State Street Corporation ESOP Fund that was offered as a *Plan* investment option and that held primarily *Company Stock.*

1.20.    "*Fairness Hearing*" shall have the meaning set forth in Section 2.1.4 hereof.

1.21.    "*Final*" shall mean, with respect to any *Final Order* approving this settlement, that (i) the time to appeal the *Final Order* has expired without the filing of any appeals, or, in the event of any appeal, an order has been entered dismissing the appeal or affirming the *Final Order*, and any time period for further appeal, including a petition for writ of certiorari, has expired.  The *Final Order* shall be *Final* even if an appeal is taken from or review is sought of the *Final Order*, if such appeal(s) or petition(s) for review concern(s) solely one or more of the following: (i) any award to Plaintiffs' Counsel of attorneys' fees and expenses

(including any *Case Contribution Award*), or (ii) the allocation of the *Settlement Proceeds* among members of the *Settlement Class*.

1.22.    "*Final Order*" shall have the meaning set forth in Section 2.1.4 hereof and be substantially in the form attached hereto as *Exhibit 2*.

1.23.    "*Immediate Family Members*" shall consist of spouses and minor children.

1.24.    "*Independent Fiduciary*" means Gallagher Fiduciary Advisors, an independent fiduciary of the *Plan* retained by *NARBC* on behalf of the *Plan* that has no "relationship to" or "interest in" (as those terms are used in the *Class Exemption*) the *Plaintiffs* or *Defendants*, to evaluate the fairness of the *Settlement* to the *Plan* and to approve the release set forth in Section 3.1 on the *Plan's* behalf.

1.25.    "*Individual Defendants*" shall mean Alison Quirk, Pamela Gormley, Ross McLellan, David O'Leary, Charles "Skip" Cutrell, Jayne Donahue, David Gutschenritter, James Malerba, Stephen DeSalvo, Kathryn Horgan, Lee Jones, Jacques Longerstaey, Doreen Rigby, Anne Tangen, and Ronald E. Logue.

1.26    *NARBC* means the North American Regional Benefits Committee of State Street Corporation .

1.27.    "*Parties*" shall mean *Plaintiffs* and *Defendants*.

1.28.    "*Person*" shall mean an individual, partnership, corporation, governmental entity, or any other form of entity or organization.

1.29.    "*Plaintiffs*" shall mean Thomas U. Kenney and Casey J. Richard.

1.30.    "*Plaintiffs' Counsel*" shall mean Shapiro Haber & Urmy LLP and Stull, Stull & Brody.

1.31.    "*Plan*" shall mean the State Street Salary Savings Program.

1.32.    "*Plan of Allocation*" shall mean the *Plan of Allocation* approved by the *Court* as contemplated by Article 2 hereof and described in Section 8.2.2 hereof.  The Plan of Allocation to be proposed by *Plaintiffs*  is included in the Long-Form Notice attached to the *Preliminary Approval Order* as Exhibit A.

1.33.    "*Plan Committees*" shall mean the Plans Investment Committee of State Street Corporation and the *NARBC*.

1.34.    "*Preliminary Approval Order*" shall have the meaning set forth in Section 2.1.1 hereof and be in  substantially the form attached hereto as *Exhibit 1*.

1.35.    "*Preliminary Motion*" shall have the meaning set forth in Section 2.1.1 hereof.

1.36.    "*Released Defendants' Claims*" shall mean all claims relating to the institution or prosecution of the Actions, or the settlement of any *Released Plaintiffs' Claims*.

1.37.    "*Released Parties*" shall mean each of the *Defendants* and their past, present and future parents, subsidiaries, and affiliates, and their respective past or present general partners, limited partners, principals, members, officers, directors, trustees, employees, agents, servants, attorneys, accountants, auditors, underwriters, investment advisors, record keepers, insurers, co-insurers and reinsurers and related or affiliated entities, in their capacities as such and in their capacities as fiduciaries for any ERISA plan for State Street employees (including the *Plan*).

1.38.    "*Released Plaintiffs' Claims*" shall mean any and all individual, class or representative claims, causes of action and rights of recovery of every nature and description, whether known or unknown, direct or indirect, asserted or unasserted, foreseen or unforeseen, matured or unmatured, contingent or vested, whether arising under federal, state, local, common, foreign or other law, rule or regulation, that Plaintiffs or any other member of the Settlement Class (i) asserted in the *Complaints* filed in the *Actions*, or (ii) could have been asserted in any court or other forum based upon, relating to or arising from the allegations, transactions, facts, matters or occurrences, errors, representations, actions, failures to act or omissions that were alleged, set forth, or referred to in the *Complaints* (including those arising from offering or retaining the ESOP, permitting or failing to prevent the purchase, sale, or holding of State Street stock by the ESOP, or the investment, acquisition, disposition or retention of any interest in the ESOP); provided, however, that this release does not include any of the claims brought in *Hill v. State Street Corp.*, Docket No. 1:10-cv-12146-GAO (the "*Hill* Action"), in which the Settlement Class and/or the *Plan* may seek to participate.

1.39.    "*Releases*" shall mean the releases and covenants not to sue set forth in Articles 3 and 4 hereof.

1.40.    "*Representatives*" shall mean legal representatives, attorneys, agents, directors, officers, or employees.

1.41.    "*Settlement*" shall mean the settlement to be consummated under this *Settlement Agreement*.

1.42.    "*Settlement Administrator*" means the firm retained by *Class Counsel* to administer the *Settlement* subject to the jurisdiction of the Court, subject to the consent of *Defendants*, which consent shall not be unreasonably withheld.

1.43.    "*Settlement Agreement*" shall mean this Class Action Settlement Agreement.

1.44.    "*Settlement Class*" shall mean all current and former *Persons* who were participants in or beneficiaries of the *Plan* whose individual account in the *Plan* held, at any time during the period August 27, 2007 to October 21, 2009, any interest in the State Street Employee Stock Ownership Plan (the "ESOP").  Excluded from the Settlement Class are the following "*Excluded Persons*":  (a) *Defendants*; (b) *Immediate Family Members*  of the *Individual*

*Defendants*; (c) any person or entity who is a partner, chief executive officer, executive vice president, director, or controlling person of the *Company*; and (d) the legal representatives, heirs, successors and assigns of any such excluded *Person*.

1.45. "*Settlement Expenses*" shall have the meaning set forth in Section 8.1 hereof.

1.46. "*Settlement Fund*" shall mean the *Class Settlement Amount* deposited with the *Escrow Agent* and any interest earned thereon.

1.47. "*Settlement Proceeds*" shall mean the balance of the *Settlement Fund* after satisfaction of attorneys' fees and expenses pursuant to Section 10.1 hereof, *Case Contribution Awards* pursuant to Section 10.1 hereof, and any other *Settlement Expenses* pursuant to Section 8.1 hereof.

1.48. "*Settlement Website*" means the website to be established or maintained by the *Settlement Administrator* where the *Settlement Class* members can obtain copies of the *Complaints*, the *Long-Form Notice*, this *Settlement Agreement* and the *Plan of Allocation*.

1.49. "*State Street Stock Fund*" shall mean the *Company Stock* investment option (the "ESOP") offered by the *Plan*.

1.50. "*Successor-in-Interest*" shall mean a *Person's* estate, *Representatives*, heirs, successors, or assigns, including successors or assigns that result from corporate mergers or other structural changes.

## 2. CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE *SETTLEMENT*

The *Parties* shall have the following obligations, and the *Settlement* is contingent on the following conditions in Sections 2.1 through 2.5 hereof, unless waived in writing by the *Parties*.

2.1 Condition #1:  Court Approval.  The *Settlement* is contingent upon *Court* approval as described below.  The *Court* will be notified as soon as practicable of the execution of the *Settlement Agreement*, and of the relevant terms regarding the effectuation of the *Settlement*.  The *Parties'* rights and obligations under the *Settlement* are contingent upon and subject to prior *Final* approval of the *Court* and the *Final Order* becoming *Final*.  The *Parties* shall seek from the *Court* (i) preliminary approval of the terms of the *Settlement*, (ii) preliminary certification of the *Settlement Class* pursuant to Federal Rule of Civil Procedure 23(b)(1), (iii) approval of the forms of *Class Notice* of the *Settlement*, and (iv) the scheduling of a hearing date for *Final* approval of the *Settlement* (including the *Plan of Allocation)* as fair, reasonable, and adequate, with appropriate time allowed for objection(s) from the *Settlement Class*.

2.1.1. Motion for Preliminary Approval of Settlement, Class Certification, and Notices.  The *Parties* shall expeditiously seek entry of the *Preliminary Approval Order* and shall, in good faith, take reasonable steps to seek the scheduling of the *Fairness Hearing,* described in

Section 2.1.4 hereof, at least ninety (90) calendar days after the mailing of the *Long-Form Notice* in accordance with Section 2.1.3 hereof.

  2.1.2.  <u>Class Certification.</u>  In connection with the proceedings on preliminary and *Final* approval of the proposed *Settlement, Plaintiffs,* through *Plaintiffs' Counsel,* will seek orders (preliminary and final, respectively) certifying the *Settlement Class* pursuant to Federal Rule of Civil Procedure 23(b)(1), and *Defendants* shall consent to certification of the *Settlement Class* for purposes of this *Settlement* only and for no other purpose. The *Parties* agree that the *Settlement Class* should be treated as a mandatory or non-opt-out class. The *Parties* also agree that if the *Court* does not enter the *Final Order,* no *Settlement Class* will be deemed to have been certified by or as a result of this *Settlement Agreement,* and the *Actions* will for all purposes with respect to the *Parties* revert to its status as of April 10, 2014. In such event, *Defendants* will not be deemed to have consented to the certification of any class, the agreements and stipulations in this *Settlement Agreement* concerning class definition or class certification shall not be used as evidence or argument to support class certification or class definition, and *Defendants* will retain all rights to oppose certification of the *Settlement Class.*

  2.1.3.  <u>Issuance of *Class Notice.*</u>  As ordered by the *Court* in its *Preliminary Approval Order*, *Class Notice* shall be disseminated to the *Settlement Class*, which shall be provided with the opportunity to object to the certification of the *Settlement Class*, the *Settlement*, and the attorneys' fees, costs and expenses sought by *Plaintiffs' Counsel.* On the timetable and in the manner set by the *Court* in the *Preliminary Approval Order*, the *Settlement Administrator* shall disseminate notice to the *Settlement Class.* The *Company* shall, at its expense, use reasonable efforts to provide the *Settlement Administrator* or other noticing agent retained by *Class Counsel*, within thirty (30) calendar days of the execution of the *Settlement Agreement*, the names and last known addresses of the *Settlement Class* in electronic format, and thereafter to respond to any reasonable written requests for accessible data in the *Company* or the *Plan* trustee's or record-keeper's (past or present) custody or control necessary to effectuate notice and to implement, enforce, or determine the amounts to be allocated pursuant to the *Plan of Allocation*. All other costs relating to the issuance of *Class Notice* shall be paid out of the *Settlement Fund*. If the *Settlement* is not approved, the actual expended cost of notice and administration shall not be refunded.

  2.1.4.  <u>The *Fairness Hearing.*</u>  Upon entry of the *Preliminary Approval Order*, the *Parties* contemplate that the *Court* will schedule and then conduct a hearing at which it will consider whether the *Settlement* is fair, reasonable, and adequate (the "*Fairness Hearing*") pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, the *Plaintiffs* will request that the *Court* determine at the *Fairness Hearing*: (i) whether to enter judgment finally approving the *Settlement* (which judgment is referred to herein as the "*Final Order*"); (ii) whether the distribution of the *Settlement Proceeds* as provided in the *Plan of Allocation* should be approved or modified; and (iii) an appropriate amount of attorneys' fees, costs, and expenses, as contemplated by Article 10 of this *Settlement Agreement*. The *Parties* agree to support entry of a *Final Order* as contemplated by clause (i) of this Section 2.1.4 and as attached hereto as *Exhibit 2*. *Defendants* will not take any position with respect to the matters described in clauses (ii) or (iii) of this Section 2.1.4, so long as *Plaintiffs'* requests are in accordance with the provisions of Articles 8 and 10 of this *Settlement Agreement*. The *Parties* covenant and agree

that they will reasonably cooperate with one another in obtaining the *Final Order* as contemplated herein at the *Fairness Hearing* and will not do anything inconsistent with this *Settlement Agreement* in seeking to obtain the *Final Order*.  If the *Court* does not enter the *Final Order,* the *Actions* will for all purposes with respect to the *Parties* revert to their status as of April 10, 2014

      2.2.   <u>Condition #2:  Dismissal of the *Actions.*</u>  The *Settlement* is contingent upon dismissal with prejudice of the *Actions.*

      2.3.   <u>Condition #3:  Finality *of Final Order.*</u>  The *Settlement* is contingent on the *Final Order* becoming *Final.*

      2.4.   <u>Condition #4:  *Independent Fiduciary.*</u>  The *Settlement* is contingent upon approval in writing of the *Settlement* (including the *Plan of Allocation*) and the *Releases* by the *Independent Fiduciary*.  The *Independent Fiduciary* will make any and all determinations on behalf of the *Plan* necessary to assess the applicability of the *Class Exemption* and whether to approve the *Settlement* and *Releases*.  The *Company* is responsible for the fees and expenses of the *Independent Fiduciary*.  All *Parties* shall cooperate in providing information to the *Independent Fiduciary* as requested.  The *Company* shall have the right to terminate the *Settlement* by providing to *Class Counsel* written notice of its election to do so: (i) until and including the day after  the *Fairness Hearing,* if the *Independent Fiduciary* has not in writing approved the *Settlement, Plan of Allocation,* or the *Releases,* or has stated that, in the judgment of the *Independent Fiduciary*, the *Settlement* would constitute a prohibited transaction under Section 406 of *ERISA*; or (ii) after the *Fairness Hearing* if the *Effective Date* cannot occur because the *Independent Fiduciary* has not in writing approved the *Settlement, Plan of Allocation* or the release described in Section 3.1.  Although the *Plan of Allocation* must be approved by the *Independent Fiduciary*, if prior to the *Fairness Hearing* the *Independent Fiduciary* determines that the *Plan of Allocation* must be amended, and *Plaintiffs* prior to the *Fairness Hearing* propose an amended plan of allocation acceptable to the *Independent Fiduciary*, then *Defendants* may not terminate the *Settlement* because the *Independent Fiduciary* has not approved the *Settlement*.

      2.5.   <u>Condition #5:  Funding of *Class Settlement Amount.*</u>  The *Settlement* is contingent upon funding of the *Class Settlement Amount* as provided for herein.  *State Street* shall deposit, or cause its insurers to deposit, the *Class Settlement Amount* into the *Settlement Fund* within the later of thirty (30) business days after (i) entry of the *Preliminary Approval Order*, or (ii) receipt by the *Company* and its insurers of all information necessary to permit them to make payment by wire and check (payee, tax identification number, wire transfer instructions or an address for physical delivery of a check with the contact person's name and telephone number, and an executed Form W-9 from the *Escrow Agent* for the Escrow Account).  No withdrawal from the *Escrow Account* shall be made prior to the *Effective Date* without written consent of Wilmer Cutler Pickering Hale and Dorr LLP ("*WilmerHale*") and *Plaintiffs' Counsel*.  The financial institution holding the *Escrow Account* shall confirm in writing that a signature of an authorized partner of *Wilmer Hale* and *Plaintiffs' Counsel* shall be required for any withdrawal prior to the *Effective Date*.

3.      RELEASES

3.1.      Release of *Defendants*.   Upon occurrence of the *Effective Date*, the *Plaintiffs*, all *Settlement Class* members, the *Plan* and all participants, fiduciaries, and beneficiaries in or of the *Plan*, and all *Successors-in-Interest* of any of the foregoing shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever released, and are forever barred from the prosecution of, any and all *Released Plaintiffs' Claims* against any and all of the *Released Parties,* except that the release shall not preclude any action or claim related to the implementation and/or enforcement of the *Settlement Agreement*.

3.2.      Release of the *Plaintiffs,* the *Plan,* the *Settlement Class* and *Plaintiffs' Counsel.* Upon the *Effective Dale,* each *Defendant* and *Released Party* shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever released, and are forever barred from the prosecution of, any and all *Released Defendants' Claims* against any and all of the *Plaintiffs*, all *Settlement Class* members, the *Plan* and all participants, fiduciaries, and beneficiaries in or of the *Plan, Plaintiffs' Counsel* (including other counsel who have appeared for Plaintiffs in the *Actions),* and all *Successors-in-Interest* of any of the foregoing, except that the release shall not preclude any action or claim related to the implementation and/or enforcement of the *Settlement Agreement*.

3.3.      Scope of *Releases.*

3.3.1.   The *Releases* set forth in this Article 3 hereof are not intended to include the release of any rights or duties arising out of this *Settlement Agreement*, including the express warranties and covenants contained herein.

3.3.2.   The *Releases* set forth in this *Settlement Agreement*, and as approved by the *Court* as described herein, shall be effective as a bar to any and all currently unsuspected, unknown, partially known or known claims within the scope of the express terms and provisions of the *Released Plaintiffs' Claims* and *Released Defendants' Claims*.   Accordingly, *Plaintiffs* hereby expressly waive, on their own behalf and on behalf of the *Settlement Class* members*,* the *Plan* and all participants, fiduciaries, and beneficiaries in or of the *Plan,* and *Defendants* hereby expressly waive, on their own behalf and on behalf of the *Released Parties*, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code, or by any similar, comparable, or equivalent law of any state or territory of the United States with regard to *Released Plaintiffs' Claims* and *Released Defendants' Claims*. Section 1542 reads in pertinent part:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The *Parties* hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and any similar, comparable, or equivalent law of any state or territory of the United States, was separately bargained for and that neither *Plaintiffs* on the one

hand, nor *Defendants* on the other, would enter into this *Settlement Agreement* unless it included a broad release of all unknown claims.  The *Parties* each expressly agree that all release provisions in the *Agreement* shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected or future claims, demands, and causes of action.  *Plaintiffs* assume for themselves on their own behalf and on behalf of the *Plan* and the participants, fiduciaries, and beneficiaries in or of the *Plan*, the risk of his, her, or its respective subsequent discovery or understanding of any matter, fact, or law, that, if now known or understood, would in any respect have affected his, her, or its entering into this *Settlement Agreement*.

4.   COVENANTS

        Upon the occurrence of the *Effective Date*, the *Parties* covenant and agree as follows:

        4.1.   Covenants Not To Sue.

                4.1.1.   *Plaintiffs*, *Settlement Class* members, *Plaintiffs' Counsel*, and their *Successors-in-Interest,* individually and on behalf of all *Settlement Class* members, the *Plan,* and all participants, fiduciaries, and beneficiaries in or of the *Plan,* covenant and agree (i) not to file or maintain against any *Released Parties* or the *Plan* any claim released under Article 3 hereof; and (ii) that the covenants and agreements herein shall be a complete defense to any such claims against any of the respective *Released Parties* and the *Plan*.  Nothing in this *Settlement Agreement* precludes *Settlement Class* members from receiving any vested benefits under the terms of the *Plan* to which they are otherwise entitled, <u>provided</u>, that claims released under Article 3 hereof shall not be deemed to be such benefits.

                4.1.2.   *Released Parties* covenant and agree (i) not to file or maintain against any other *Released Party* any claim released under Article 3 hereof; and (ii) that the covenants and agreements herein shall be a complete defense to any such claims against any of the respective *Released Parties* with respect to the Released Claims.

        4.2.   <u>Cooperation.</u>  The *Parties* shall in good faith attempt to address any timely-filed objection to the *Settlement*, any objection or concern raised by the *Independent Fiduciary*, and any objection or concern raised by the Department of Labor, including, to the extent reasonably necessary and practicable, by promptly supplying any non-privileged information in their possession that has been reasonably requested.

        4.3.   <u>Taxation of *Class Settlement Amount*</u>.  *Plaintiffs* acknowledge on their own behalf, and on behalf of the *Settlement Class*, that the *Released Parties* have no responsibility for any taxes due on funds once deposited in the *Settlement Fund* or that *Plaintiffs' Counsel* receive from the *Settlement Fund*, should any fees and expenses be awarded pursuant to Article 10 hereof.  Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the *Settlement Fund*.

5.   REPRESENTATIONS AND WARRANTIES

5.1.    *Plaintiffs'* Representations and Warranties.

    5.1.1.    *Plaintiffs* represent and warrant that they have not assigned or otherwise transferred any interest in any *Released Plaintiffs' Claims* against any *Released Party*, and further covenant that they will not assign or otherwise transfer any interest in any *Released Plaintiffs' Claims*; and

    5.1.2.    Pursuant to Articles 3 and 4 hereof, *Plaintiffs* represent and warrant that upon the occurrence of the *Effective Date* they shall have no surviving claim or cause of action against any of the *Released Parties* or the *Plan* with respect to *Released Plaintiffs' Claims.*

5.2.    <u>*Parties'* Representations and Warranties.</u>  The *Parties*, and each of them, represent and warrant:

    5.2.1.    That they are voluntarily entering into this *Settlement Agreement* as a result of arm's-length negotiations among their counsel, that in agreeing to this *Settlement Agreement* they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and that, except as expressly provided herein, they have not been influenced to any extent whatsoever in executing this *Settlement Agreement* by any representations, statements, or omissions pertaining to any of the foregoing matters by any *Party* or by any *Person* representing any *Party* to this *Settlement Agreement*.  Each of the *Parties* assumes the risk of mistake as to facts or law; and

    5.2.2.    That they have carefully read the contents of this *Settlement Agreement,* and have freely agreed to the *Settlement*.  The *Parties* and each of them further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the *Settlement*, this *Settlement Agreement*, and all of the matters pertaining thereto, as he, she, or it deems necessary; and

    5.2.3.    That the *Actions* were filed by *Plaintiffs* and defended by the *Released Parties* in good faith, in accordance with Federal Rule of Civil Procedure 11.

5.3.    <u>Signatories' Representations and Warranties.</u>  Each individual executing this *Settlement Agreement* on behalf of any *Party* does hereby personally represent and warrant to the other *Parties* that he or she has the authority to execute this *Settlement Agreement* on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

6.    NO ADMISSION OF LIABILITY

6.1.    The *Parties* understand and agree that this *Settlement Agreement* embodies a compromise settlement of disputed claims, and that nothing in this *Settlement Agreement*, including the furnishing of consideration for this *Settlement Agreement*, shall be deemed to constitute any finding of fiduciary status under *ERISA* or wrongdoing by any of the *Released Parties*, or give rise to any inference of fiduciary status under *ERISA* or wrongdoing or

admission of wrongdoing or liability in this or any other proceeding.  This *Settlement Agreement* and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual.  *Defendants* specifically deny any such liability or wrongdoing.  Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence, in any action or proceeding for any purpose, except (i) in an action or proceeding arising under this *Settlement Agreement* or arising out of or relating to the *Preliminary Approval Order* or the *Final Order*, or (ii) in an action or proceeding where the *Releases or the Covenants Not to Sue* provided pursuant to this *Settlement Agreement* may serve as a bar to the prosecution of such action or proceeding as well as to any recovery in such action or proceeding.

6.112.  *Defendants* have denied and continue to deny that they have committed any act or omission giving rise to any liability and/or violation of law, and are entering into this *Settlement* to eliminate the burden and expense of further litigation.

6.123.  *Plaintiffs* believe they are prosecuting meritorious claims on which they will prevail, but understand there are obstacles and risks to recovery which they believe warrant the *Settlement*.

7.    THE SETTLEMENT FUND AND DELIVERIES INTO THE SETTLEMENT FUND

7.1.    *The Settlement Fund*.

7.1.1.  The *Settlement Fund* shall be created as set forth in Section 2.5 hereof.

7.1.2.  The *Settlement Fund* shall include interest earned thereon, for the benefit of *Plaintiffs* and the *Settlement Class*, and shall be invested only in short-term United States Agency or Treasury securities (and/or mutual funds or money market accounts that invest exclusively in such securities) or in a fully U.S. Government-insured account.  The *Parties* agree that the *Settlement Fund* is intended to be a Qualified Settlement Fund under Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder.  It is intended that the *Settlement Fund* be structured and administered to preserve, to the maximum degree possible, the tax benefits associated with ERISA-qualified plans.  The *Parties* agree that the *Settlement Fund* will not make, and *Class Counsel* will not make on the *Settlement Fund's* behalf, an election under Treasury Regulation § 1.468B-l(k), pursuant to which the *Settlement Fund* would be treated as a grantor trust for federal income tax purposes.  Accordingly, all taxes on the income of the *Settlement Fund* and tax-related expenses incurred in connection with the taxation of the *Settlement Fund*, if any, shall be paid out of the *Settlement Fund*.

7.1.3.  All fees and expenses, including fees and expenses incurred by the *Settlement Administrator* or any other third-party vendor for calculation, allocation, and distribution pursuant to the *Plan of Allocation,* and providing support, such as the hosting of a website and call line, will be paid from the *Settlement Fund*, subject to the provisions of Article 8 hereof.

7.1.4.   All fees and expenses, including (i) expenses associated with the preparation and filing of all tax reports and tax returns required to be filed by the *Settlement Fund*; (ii) payment of taxes, if any, owed by the *Settlement Fund;* (iii) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the *Settlement Fund*; and (iv) fees charged and expenses incurred by the *Escrow Agent* associated with administration of the *Settlement Fund*, will be paid from the *Settlement Fund*, subject to the provisions of Article 8 hereof.

7.2.   <u>Sole Monetary Contribution.</u>  Except as provided in Section 2.4, the *Class Settlement Amount* shall be the full and sole monetary contribution made by or on behalf of *Defendants* in connection with the *Settlement* effected between *Plaintiffs* and *Defendants* under this *Settlement Agreement*.  *Defendants* shall not make any other monetary contribution for any costs, expenses, attorneys' fees or other amount associated with or related to the *Actions* or *Settlement*.

7.3.   All funds held by the *Escrow Agent* shall remain subject to the jurisdiction of the *Court* until such time as such funds shall be distributed or returned to the party or parties paying the same pursuant to this *Agreement* and/or further order(s) of the *Court*.

7.4.   In the event that (a)(i) a case is commenced under Title 11 of the United States Code as to any *Defendant* that personally contributed to the *Class Settlement Amount* or any insurer that did so on any *Defendant's* behalf; or (ii) a trustee, receiver, conservator, or other fiduciary is appointed with respect to any such *Defendant* or insurer under any similar law; and (b) a court of competent jurisdiction enters a final order finding such contribution or any portion thereof to be a preference, voidable transfer, fraudulent transfer or similar transaction and requiring such contribution or portion thereof to be returned; and (c) such amount is not promptly deposited into the *Settlement Fund* by others, then, at the election of *Class Counsel*, the *Parties* shall jointly move the *Court* to terminate this *Settlement Agreement* and to vacate any *Releases* given or judgment entered in favor of the *Defendants*.  Upon the granting of such motion, the *Actions* will for all purposes with respect to the *Parties* revert to its status as of April 10, 2014.  *Plaintiffs' Counsel* shall return any attorneys' fees and costs paid to them pursuant to this *Settlement*, and any cash amounts in the *Settlement Fund* shall be returned as provided in Section 9.2.3.

8.   PAYMENTS FROM THE *SETTLEMENT FUND*

*Defendants* and their counsel shall not charge any fees or expenses to the *Settlement Fund*.  Except as otherwise described or provided for herein, all other costs relating to the *Settlement* shall be borne by the *Party* that incurred them.

8.1.   <u>Settlement Expenses.</u>  *Settlement Expenses* are (i) any and all reasonable costs and expenses borne by the *Settlement Administrator* charged to the *Settlement Fund* that are related to the administration of the *Settlement* and not otherwise expressly provided for herein; (ii) the reasonable costs and expenses borne by the *Settlement Administrator* regarding the notice and administration of carrying out the plan of allocation incident to this *Settlement*,; and (iii) any reasonable costs relating to the issuance of *Class Notice*, excluding the expenses borne by the

*Company* of providing the *Settlement Administrator* or other noticing agent retained by *Class Counsel* with a list of the names and last known addresses of members of the *Settlement Class* in electronic format and responding to requests as provided in Section 2.1.3. All *Settlement Expenses* (including those described in Section 7.1.3) shall be paid from the *Settlement Fund* prior to the distribution of the *Settlement Proceeds*. Prior to the *Effective Date*, *Plaintiffs' Counsel* may pay from the *Escrow Account* the reasonable and actual *Settlement Expenses* up to $50,000 without further approval from *Defendants* or further order of the *Court*. Payment of additional *Settlement Expenses* shall be subject to approval by *WilmerHale*, not to be unreasonably withheld. Any dispute concerning whether a failure to provide approval was reasonable shall be submitted to the *Court*. With respect to taxes, if any, after remittance of the *Settlement Proceeds* to the *Plan* (*i.e.*, when taking distributions from the *Plan*), the *Settlement Class* members are responsible for any and all tax liabilities arising from each of their distributions or withdrawals. *Defendants* make no representation or warranty with respect to the tax treatment of any *Plaintiff* or *Settlement Class* member regarding any distribution or withdrawal of the *Settlement Proceeds*. All other fees and costs relating to the *Settlement* shall be borne by the *Party* that incurred them, or his, her, or its insurer or indemnitor, and shall not be paid from the *Settlement Fund*.

 8.2. Disbursements from the *Settlement Fund*. *Class Counsel* shall direct the disbursement of money from the *Settlement Fund*, which shall be the sole source of all awards for the *Settlement Class*, and fees and expenses for *Plaintiffs' Counsel*, as follows:

 8.2.1. For Taxes and Expenses of the *Settlement Fund*. As provided in Section 7.1.2 hereof.

 8.2.2. For the *Plan of Allocation*. *Class Counsel* shall propose to the *Court* and to the *Independent Fiduciary* a *Plan of Allocation*, and may propose to the *Court* an amended *Plan of Allocation* with the consent of the *Independent Fiduciary*. To the extent they were participants or beneficiaries of the *Plan* at any time during the *Class Period*, *Defendants* and their *Immediate Family Members*, any entity in which a *Defendant* has a controlling interest, and their heirs, *Successors-in-Interest*, or assigns (in their capacities as heirs, *Successors-in-Interest*, or assigns) will be excluded from the *Plan of Allocation*. The *Company* will, at the request of *Class Counsel* and without charge, consult with and provide *Class Counsel* with any reasonable information related to the administration and feasibility of any *Plan of Allocation* being considered by *Class Counsel* (all such information to be kept confidential by *Class Counsel* and used exclusively for this purpose). *Defendants* and their *Successors-in-Interest* shall have no liability in the event of any action or failure to act by any entity with respect to the creation, calculation, or implementation of the *Plan of Allocation*.

 8.2.3. For Attorneys' Fees and Expenses. As provided in Section 10.1 hereof, after the *Effective Date, Class Counsel* will direct payment to *Plaintiffs' Counsel* of any *Court*-approved award of attorneys' fees and expenses from the *Settlement Fund,* which shall be *Plaintiffs' Counsel's* sole source of recourse for payment of its attorneys' fees and expenses.

 8.2.4. *Case Contribution Awards*. After the *Effective Date*, the *Claims Administrator* shall pay any *Case Contribution Award* (as described in Section 10.1 hereof) that

is approved by the *Court* to those *Named Plaintiffs* and in such amounts approved by the *Court*. *Class Counsel* shall provide the address of the recipients to the *Claims Administrator*. No payment in excess of $10,000 shall be paid to any of the *Named Plaintiffs* as a *Case Contribution Award*.

9.   TERMINATION OF THE SETTLEMENT AGREEMENT

9.1.   Termination.   Unless *Defendants* and *Plaintiffs* otherwise agree in writing, the *Settlement* and this *Settlement Agreement* shall be deemed terminated thirty (30) days after any of the following occurs:

9.1.1.   If the *Court* refuses to approve this *Settlement Agreement* or any material part of it;

9.1.2.   If the *Court* declines to enter the *Preliminary Approval Order* in any material respect;

9.1.3.   If *Court* declines to enter the *Final Order* in any material respect;

9.1.4.   The date upon which the *Final Order* is modified or reversed in any material respect by the United States Court of Appeals for the First Circuit or the Supreme Court of the United States and such modification is no longer appealable, unless waived by the *Parties*;

9.1.5.   The date upon which an *Alternative Judgment* is modified or reversed in any material respect by the United States Court of Appeals for the First Circuit or the Supreme Court of the United States and such modification is no longer appealable, unless waived by the *Parties*; or

9.1.6.   If any of the conditions of Article 2 of this *Settlement Agreement* are not fully satisfied or waived in accordance with their terms; provided, however, no decision by the *Court* concerning the *Plan of Allocation* (including under Section 2.1.4) other than a decision to approve a *Plan of Allocation* that the *Independent Fiduciary* has not also approved, shall affect the validity of the *Settlement Agreement* or finality of the *Settlement* in any manner.

9.1.7.   The *Court* determines that the *Effective Date* cannot occur.

9.2.   Consequences of Termination of the *Settlement Agreement*.   If the *Settlement Agreement* is terminated and rendered null and void for any reason specified in Section 9.1 hereof, the following shall occur:

9.2.1.   The *Actions* shall for all purposes with respect to the *Parties* revert to their status as of April 10, 2014.

9.2.2.   All provisions of this *Settlement Agreement* and any subsequently related documents shall be null and void having no effect and no *Settlement Class* will be deemed to have been certified by or as a result of this *Settlement Agreement*, and the *Actions* will for all

purposes with respect to the *Parties* revert to their status as of April 10, 2014, as provided in Section 2.1.2.  Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence in any action or proceeding for any purpose.

       9.2.3.   Upon receipt of written notice from the *Company*, the *Escrow Agent* will return the *Settlement Fund* to State Street or its designees within ten (10) business days, together with interest thereon and less any *Agreed Expenses*.  *Agreed Expenses* are any taxes on the *Settlement Fund* as described in Section 7.1.2 and the costs of notice as described in Section 2.1.3 of this *Settlement Agreement* incurred up to and including the date of receipt of written notice from the *Company* by the *Escrow Agent*.  It is expressly understood and agreed that *Agreed Expenses* do not include attorneys' fees and expenses under Sections 8.2.1 and 8.2.4, respectively, or anything else other than taxes and costs of notice and administration as described in Sections 7.1.2, 8.1 and 2.1.3, respectively.

10.    ATTORNEYS' FEES AND EXPENSES

      10.1.   <u>Application for Attorneys' Fees and Expenses and *Case Contribution Awards*</u>. *Plaintiffs* and their counsel may apply to the *Court* for, and shall be entitled to receive, reimbursement of costs and expenses from *Settlement Fund* after the *Effective Date*.  *Plaintiffs' Counsel* shall petition the *Court* for reimbursement of reasonable costs and expenses and for an award of attorneys' fees not to exceed one-third (33.33%) of the *Settlement Fund*.  Fees or expenses awarded to *Plaintiffs' Counsel* by the *Court* shall be payable to *Class Counsel* after the *Effective Date* as approved by the Court.  *Class Counsel* may also apply to the *Court* for a *Case Contribution Award* to *Named Plaintiffs,* to be paid from the *Settlement Fund* as consideration for their time and effort devoted to the prosecution of the *Action,* which shall not exceed $10,000 per *Named Plaintiff* ("*Case Contribution Award*").  *Defendants* shall not support or oppose the application for a *Case Contribution Award* to *Named Plaintiffs* if the application does not exceed $10,000 per *Named Plaintiff*.

      10.2.   <u>Post-Award Expenses.</u>  *Class Counsel* may make a supplemental application to the *Court* for an award of expenses with respect to *post-Settlement* proceedings and administration, and any such award shall be payable from the *Settlement Fund*.

11.    MISCELLANEOUS PROVISIONS

      11.1.   <u>Governing Law.</u>  This *Settlement Agreement* shall be governed by the laws of the Commonwealth of Massachusetts without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

      11.2.   <u>Severability.</u>  The provisions of this *Settlement Agreement* are not severable, except that in the event that any court with original or appellate jurisdiction over these *Actions* issues a *Final* determination that any portion of Section 3.1 hereof is not enforceable, the *Parties* may (but shall not be required to) jointly agree in writing to modify Section 3.1 to conform with such determination. Further, in the event that the *Court* or any court with appellate jurisdiction over these *Actions* fails to awards attorneys' fees and expenses in the amount sought

by *Class Counsel* or to award *Case Contribution Awards* in the amount sought by *Plaintiffs*, such decision shall not provide cause for *Plaintiffs* to withdraw, void or nullify this *Settlement Agreement*.

11.3.      Amendment.  Before entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Parties* with notice to be given to the *Court* of the agreed modification or amendment.  Following entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed on behalf of all *Parties*, and approved by the *Court*.

11.4.      Waiver.  The provisions of this *Settlement Agreement* may be waived only by an instrument in writing executed by the waiving *Party*.  The waiver by any *Party* of any breach of this *Settlement Agreement* shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this *Settlement Agreement*.

11.5.      Construction.  None of the *Parties* hereto shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

11.6.      Principles of Interpretation.  The following principles of interpretation apply to this *Settlement Agreement*:

11.6.1. Headings.  The headings of this *Settlement Agreement* are for reference purposes only and do not affect in any way the meaning or interpretation of this *Settlement Agreement*.

11.6.2. Singular and Plural.  Definitions apply to the singular and plural forms of each term defined.

11.6.3. Gender.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

11.6.4. References to a *Person*.  References to a *Person* are also to the *Person's* permitted successors and assigns.

11.6.5. Terms of Inclusion.  Whenever the words "include," "includes," or "including" are used in this *Settlement Agreement*, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

11.7.      Further Assurances.  Each of the *Parties* agrees, without further consideration and as part of finalizing the *Settlement* hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this *Settlement Agreement*.  The *Parties* shall in good faith attempt to address any timely-filed objection to the *Settlement*, any objection or concern raised by the *Independent Fiduciary*, and any objection or concern raised by

the Department of Labor, including, to the extent reasonably necessary and practicable, by promptly supplying any non-privileged information in their possession that has been reasonably requested.

     11.8.  <u>Survival.</u>  All representations, warranties, and covenants set forth in this *Settlement Agreement* shall be deemed continuing and shall survive the *Effective Date* of this *Settlement Agreement*.

     11.9.  <u>Notices.</u>  Any notice, demand, or other communication to any *Party* under this *Settlement Agreement* (other than the *Class Notice*, or other notices given at the direction of the *Court*) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below (or to such different address as may be provided in writing) and delivered, by registered or certified mail (postage prepaid), by confirmed facsimile or email, or by reputable express overnight courier:

     IF TO *PLAINTIFFS:*

     **SHAPIRO HABER & URMY LLP**
     Thomas Shapiro
     Michelle Blauner
     Seaport East
     2 Seaport Lane
     Boston, MA 02110
     Tel: (617) 439-3939
     Fax: (617) 439-0134
     tshapiro@shulaw.com
     mblauner@shulaw.com

     **STULL, STULL & BRODY**
     Mark Levine
     Patrick Slyne
     6 East 45th Street
     New York, NY 10017
     Tel: (212) 687-7230
     Fax: (212) 490-2022
     mlevine@ssbny.com
     pkslyne@ssbny.com

     IF TO *DEFENDANTS:*

     **WILMER CUTLER PICKERING HALE AND DORR LLP**
     William H. Paine
     John J. Butts
     60 State Street
     Boston, MA 02109
     Tel: (617) 526-6000

Fax: (617) 526-5000
william.paine@wilmerhale.com
john.butts@wilmerhale.com

11.10.   Entire Agreement.   This *Settlement Agreement* contains the entire agreement among the *Parties* relating to this *Settlement*.

11.11.   Counterparts.   This *Settlement Agreement*, and any amendments thereto, and waivers of conditions, may be executed by exchange of faxed or electronically mailed executed signature pages, and any signature transmitted by facsimile or electronic mail for the purpose of executing this *Settlement Agreement* shall be deemed an original signature for purposes of this *Settlement Agreement*.   This *Settlement Agreement* may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

11.12.   Binding Effect.   This *Settlement Agreement* binds and inures to the benefit of the *Parties* hereto, their assigns, heirs, administrators, executors, and successors.

11.13.   *Agreement Execution Date.*   The date on which the last signature is affixed below shall be the *Agreement Execution Date*.

IN WITNESS WHEREOF, the *Parties* have executed this *Settlement Agreement* on the dates set forth below.

[Execution Pages Follow]

ON BEHALF OF THE *PLAINTIFFS*:

Dated: July 8, 2014

By: _____

**SHAPIRO HABER & URMY LLP**
Thomas G. Shapiro
Michelle Blauner
Seaport East
2 Seaport Lane
Boston, MA  02110
Tel: (617) 439-3939
Fax: (617) 439-0134
tshapiro@shulaw.com
mblauner@shulaw.com

***Counsel for Plaintiff Casey J. Richard
and Settlement Class Counsel***

Dated: July 8, 2014

By: _____

**STULL, STULL & BRODY**
Mark Levine
Patrick Slyne
6 East 45th Street
New York, NY 10017
Tel:  (212) 687-7230
Fax: (212) 490-2022
mlevine@ssbny.com
pkslyne@ssbny.com

***Counsel for Plaintiff Thomas U. Kenney
and Settlement Class Counsel***

ON BEHALF OF THE *DEFENDANTS*:

Dated: July 8, 2014

By: _____

**WILMER CUTLER PICKERING HALE**
**AND DORR LLP**
Jeffrey B. Rudman
William H. Paine
James W. Prendergast
John J. Butts
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
jeffrey.rudman@wilmerhale.com
william.paine@wilmerhale.com
james.prendergast@wilmerhale.com
john.butts@wilmerhale.com

***Counsel for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I, John J. Butts, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) dated July 8, 2014.

Dated: July 8, 2014


*/s/ John J. Butts*
John J. Butts

Exhibit 1:      *Preliminary Approval Order*
                Exhibit A to *Preliminary Approval Order*:  *Long-Form Notice*
                Exhibit B to *Preliminary Approval Order*:  *Publication Notice*

Exhibit 2:      *Final Order*